<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICOLE O.,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 25-00202 (GC)<br><br>**<u>OPINION</u>** |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff Nicole O.'s[1] appeal of the final

decision of the Commissioner of Social Security (Commissioner[2]) denying Plaintiff's application

for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C.

§ 1381, *et seq*. After careful consideration of the entire record, including the entire Administrative

Record, the Court decides this matter without oral argument in accordance with Federal Rule of

Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other

good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1] The Court identifies Plaintiff by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2] Frank J. Bisignano became Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

I.      **BACKGROUND**

A.      **Procedural History**

Plaintiff is a 45-year-old woman with a high school education who previously worked as a receptionist.  (AR 64, 128-29[3]; ECF No. 9 at 6.)  On March 3, 2022, Plaintiff filed an application for SSI, alleging that she became disabled as of September 1, 2021.  (AR 59; ECF No. 9 at 5.)  Plaintiff alleged that she could not work because of four health conditions: seizures, migraines, post-traumatic stress disorder (PTSD) and severe depression.  (AR 128.)  Plaintiff's claim was initially denied on November 18, 2022,[4] and it was denied again upon reconsideration on February 13, 2023.  (*Id.* at 156, 170.)  Plaintiff then appeared before the Administrative Law Judge (ALJ) and testified at an administrative hearing, which was held virtually on January 4, 2024.  (AR 59; ECF No. 9 at 5.)

On January 18, 2024, the ALJ issued Plaintiff an unfavorable decision.  (AR 59-69; ECF No. 9 at 5.)  The ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" and that Plaintiff therefore was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  (AR 68-69.)

Subsequently, Plaintiff requested a review of the ALJ's decision before the Appeals Council, which was denied on October 11, 2024.  (ECF No. 9 at 6.)  Therefore, the ALJ's decision became the Commissioner's final decision.  (*Id.*)

On January 8, 2025, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g).  (ECF

---

[3]      "AR" refers to the Administrative Record, available at ECF No. 8.  This Opinion cites the internal page numbers when referring to the Administrative Record.  Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4]      Plaintiff's Brief notes this date as September 18, 2022.  (ECF No. 9 at 5.)  However, the Administrative Record shows the date to be November 18, 2022.  (*See* AR 156.)

No. 1 at 1.) Plaintiff argues that the ALJ failed to properly address the medical opinion evidence, produced a residual functional capacity (RFC) assessment that was not supported by substantial evidence, and failed to properly address Plaintiff's migraines. (*See generally* ECF No. 9.)

**B.      The ALJ's Decision**

The ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff is not disabled. (AR 60.) *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since March 3, 2022, the application date."[5] (AR 61.) Although Plaintiff worked after the application date answering the phone at a hair salon, it was "an unsuccessful work attempt," as she was let go because "she could not keep up with the work." (*Id.*)

At step two, the ALJ found that Plaintiff "has the following severe impairments: epilepsy, migraines, a depressive disorder, an anxiety disorder, a bipolar disorder and [PTSD]." (*Id.*) The ALJ noted that these impairments "significantly limit the ability to perform basic work activities." (*Id.*) The ALJ determined that Plaintiff's neck aneurysm is not severe because records and Plaintiff's testimony indicate that the aneurysm is "stable." (*Id.* at 61-62.) The ALJ also determined that Plaintiff's high blood pressure is not severe because, although the record notes a history of hypertension, "there is no evidence of recurrent emergency room visits, inpatient hospital admissions or end organ damage" and the impairment is "controlled with medication."

---

[5]      "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." *Id.* § 416.972(a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b).

(*Id.* at 62.)

At step three, the ALJ found that none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulations.  (*Id.* at 62-63.)

At step four, the ALJ conducted an RFC assessment to determine whether Plaintiff could perform the requirements of her past relevant work.[6]  (*Id.* at 63-67.)  While the ALJ concluded Plaintiff "is unable to perform any past relevant work," the ALJ also concluded that Plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes or scaffolds; must avoid concentrated exposure to noise; must avoid concentrated exposure to sunlight; must avoid unprotected heights and moving mechanical parts; able to understand, remember and carry out simple instructions; able to perform work whether specific production rates are not required; able to perform work that is not in a team environment; able to tolerate occasional contact with supervisors, coworkers, and the public; able to perform work where travel and the use of public transportation are not essential to job performance; able to adapt to routine changes in the workplace that are occasional; and due to lapses in concentration[,] focus or memory and or the need for unscheduled breaks would be off task 5% of the day.

(*Id.* at 63, 67.)  To arrive at this conclusion, the ALJ stated that they "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (*Id.* at 63 (citing 20 C.F.R. § 416.929 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2016 WL 1119029 (Mar. 16, 2016)).)  The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s)."  (*Id.* (citing 20 C.F.R. § 416.920c).)

In considering Plaintiff's symptoms, the ALJ stated that ALJ's must follow a two-step process.  (*Id.* at 64.)  First, the ALJ must determine whether "there is an underlying medically

---

[6]     Residual functional capacity (RFC) is defined as "the most you can still do despite your limitations."  20 C.F.R. § 416.945.

determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.*) Second, if there is such an impairment, the ALJ stated the ALJ would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities." (*Id.*) In making this evaluation, if Plaintiff's statements about intensity, persistence, and limiting effects "are not substantiated by objective medical evidence," the ALJ stated ALJs must consider "other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed Plaintiff's testimony and "the evidence" to find step one satisfied. (*Id.*) The ALJ then proceeded to step two and found that "the claimant's statements concerning the intensity, persistence and limiting effects" of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 64-65.) In reaching this conclusion, the ALJ analyzed the record as to Plaintiff's "seizure disorder," "migraine headaches," and "psychiatric impairment." (*Id.* at 65-67.)

The ALJ concluded that "the claimant's impairments impose some functional limitations." (*Id.* at 67.) The ALJ found that the evidence "supports a finding that the claimant could perform work at all exertional levels with postural and environmental limitations" due to migraines and epilepsy and that Plaintiff also has "mental limitations" because of her depressive disorder, anxiety disorder, and bipolar disorder. (*Id.*) However, the ALJ found that these limitations "[do] not preclude work related activity." (*Id.*)

The ALJ then discussed the role of medical opinions in the RFC assessment. (*Id.* at 67.) The ALJ found the opinions of medical examiners hired by Disability Determination Services (DDS) "persuasive" because they were "consistent with the medical evidence." (*Id.*) The ALJ

also noted the consultative psychological examination and stated that no opinion on the claimant's ability to perform work related activity was provided. (*Id.*) Still, the ALJ "considered the examiner's findings" and determined the examination "support[ed] no more than moderate mental functional limitations." (*Id.*)

The ALJ concluded that Plaintiff "is unable to perform any past relevant work." (*Id.*) The ALJ cited the testimony of the vocational expert, who testified that "the claimant is unable to perform past relevant work based upon the established residual functional capacity." (*Id.*)

Finally, at step five, the ALJ considered whether jobs exist in the national economy that Plaintiff could perform given her age, education, work experience, and RFC results. (*Id.* at 68.) Based on questions posed by the ALJ, a vocational expert testified that Plaintiff could perform jobs such as "merchant marker," "lab aide," and "document preparer," and provided estimates regarding the number of such jobs available in the economy. (*Id.*) As such, the ALJ concluded that Plaintiff could "mak[e] a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) Therefore, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act. (*Id.*)

## II.    **LEGAL STANDARD**

### A.    **Standard of Review**

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[7] In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359

---

[7]    The standard of judicial review is the same for Social Security Disability Insurance as it is for SSI. *Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 729 n.1 (3d Cir. 2010) ("The evaluation of the disability itself . . . is the same under [the Supplemental Security Income and Social Security Disability Insurance programs.] . . . Likewise, the standard of review is the same.").

(3d Cir. 2011) (citation omitted).  Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 775-76 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'"  *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (*e.g.*, that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."  *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently."  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Legal issues, in contrast, are subject to a plenary or *de novo* review.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner[.]") (quoting *Chandler*, 667 F.3d at 359).

### B.    Determining Disability

To be eligible for SSI due to disability under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).  The individual's impairment must be severe to the point that the

individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

###    C.    Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.") (citation omitted).

## III.  <u>DISCUSSION</u>

Plaintiff makes three arguments in support of her appeal.  First, she argues that the ALJ failed to properly address the medical opinion evidence.  Second, she contends that the ALJ's RFC assessment was not supported by substantial evidence.  Third, she argues that the ALJ failed to properly address Plaintiff's migraines.  On review of the ALJ's decision (*see* AR 56-69) and the Administrative Record (*see generally* ECF No. 8), the Court finds good cause to affirm the Commissioner's decision.

### A.    The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff first argues that the ALJ did not properly address the medical opinion evidence in the Administrative Record.  (ECF No. 9 at 11-15.)  With respect to the DDS examiners, Plaintiff argues that the ALJ failed to adequately articulate how the ALJ considered the supportability and consistency of the opinions for the purposes of finding them persuasive, despite regulations requiring the ALJ to do so.  (*Id.* at 11-12.)  With respect to Dr. Resnikoff, who performed a psychiatric consultative examination, Plaintiff argues that the ALJ did not adequately address numerous observations, including that Plaintiff appeared "disheveled," made inconsistent eye contact, depended on her mother for clarification during the examination, struggled with simple calculations, possessed estimated "borderline" intellectual functioning, and suffered from major depressive disorder and anxiety disorder.  (*Id.* at 13-14.)  Dr. Resnikoff also recommended that a third party, instead of Plaintiff, manage any funds Plaintiff receives, which Plaintiff argues is not addressed in the ALJ's decision.  (*Id.* at 13.)  Therefore, Plaintiff concludes, the ALJ's findings of only "moderate" limitations were not supported by substantial evidence.  (*Id.* at 15.)

The Commissioner argues that the ALJ "reasonably articulated the basis for [the ALJ's] assessment of the opinion evidence," noting that the ALJ found the state agency psychologists'

opinions, which found that Plaintiff had a moderate mental RFC, persuasive because they were consistent with the medical evidence. (ECF No. 11 at 12.) The Commissioner also reiterates that Dr. Resnikoff's evaluation did not provide a medical opinion, but nonetheless the ALJ found that the evaluation "supported no more than moderate mental functional limitations." (*Id.*)

Under 20 C.F.R. § 416.920c(a), for claims filed after March 27, 2017, an ALJ is required to consider medical opinions and determine persuasiveness of the opinions by considering specific factors listed in the regulations. These factors include: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether it was an examining relationship; (4) specialization; and (5) other relevant factors. *Id.* § 416.920c(c). Supportability and consistency are the most important factors. *Id.* § 416.920c(b)(2). Consistency is "a medical opinion's alignment 'with the evidence from other medical sources and nonmedical sources in the claim.'"[8] *Tammy L. Z. v. Comm'r of Soc. Sec.*, Civ. No. 23-295, 2025 WL 1779229, at *2 (D.N.J. June 27, 2025) (quoting 20 C.F.R. § 416.920c(c)(2)). Supportability considers whether "the objective medical evidence and supporting explanations presented" by the doctor "back up" the doctor's opinion.[9] *Id.* Accordingly, an ALJ must "explain how [the ALJ] considered [these two] factors" but need not "explain how [the ALJ] considered"

---

[8]    "Consistency" according to regulation means that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

[9]    "Supportability" according to regulation means that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

the other factors.  20 C.F.R. § 416.920c(b)(2).  When giving this explanation, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" and rather can "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec*., 115 F.4th 637, 639 (3d Cir. 2024).

### 1.  DDS Examiners

Plaintiff argues that the ALJ failed to properly articulate how the ALJ considered the supportability and consistency of the DDS examiners' opinions when evaluating their persuasiveness, even though regulations require the ALJ to do so.  (ECF No. 9 at 11 (citing AR 67).)  The Commissioner argues that the ALJ adequately addressed these factors.  (ECF No. 11 at 11-12.)

The Court first considers Plaintiff's arguments regarding the sufficiency of the ALJ's explanation of consistency.  Looking to the ALJ's decision, the ALJ stated that the DDS opinions were "persuasive as it is consistent with the medical evidence."  (AR 67.)  Plaintiff argues this statement is conclusory.  (ECF No. 9 at 12.)  However, prior to this statement, the ALJ provided an extensive analysis of the medical evidence.  (AR 65-67.)  As such, the Court easily infers that the ALJ found the DDS opinions persuasive because they align with the evidence the ALJ already analyzed in the decision.  Therefore, the Court finds that the consistency factor was adequately considered by the ALJ.

Next, while the ALJ does not use the word "supportability" in the decision, the Court finds that the ALJ has "weave[d] supportability" into the decision.  *Zaborowski*, 115 F.4th at 639.  Where a court is "satisfied the ALJ was sufficiently familiar with the medical evidence to have evaluated whether it supported the medical opinion," a court may find the medical opinion adequately explained.  *Alyssa N. R. v. O'Malley*, Civ. No. 23-151, 2024 WL 4700638, at *8 (M.D. Pa. Nov. 6,

2024). Here, the ALJ thoroughly analyzed medical evidence in the record prior to determining that the DDS opinions were persuasive. (AR 65-67.) Moreover, the evidence discussed in the DDS opinions aligns with the evidence discussed by the ALJ in the decision: the ALJ's decision analyzes the same neurology and general practitioner records as discussed in the DDS opinions and both discuss Dr. Resnikoff's report. (*Id.* at 65-67, 129-30, 135, 142, 144-45.) As such, "a fair reading of the ALJ's decision and the state agency evidence reflects that the ALJ implicitly found that the medical evidence cited in the underlying assessments . . . supported the unanimous state agency opinions that Plaintiff was capable of . . . work." *Steve M. v. Comm'r of Soc. Sec.*, Civ. No. 25-130, 2025 WL 3140877, at *5 (D.N.J. Nov. 10, 2025) (citation modified) (citing *Dustin G. v. O'Malley*, Civ. No. 22-3052, 2024 WL 4512040, at *11 (D.N.J. Oct. 17, 2024)). Moreover, the ALJ expressly acknowledged the governing regulation, 20 C.F.R. § 416.920c, a fact that courts have found persuasive in determining that an ALJ properly considered these factors. (AR 63.) *See also Steve M.*, 2025 WL 3140877, at *5; *Dustin G.*, 2024 WL 4512040, at *11.

Taken together, the Court concludes that the ALJ sufficiently articulated the supportability and consistency of the DDS opinions. *See Zaborowski*, 115 F.4th at 639-40 (finding that the ALJ adequately articulated supportability and consistency factors where an opinion was "persuasive because it is consistent with the record"); *Serrano v. Kijakazi*, Civ. No. 20-3985, 2021 WL 4477137, at *4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").

### 2. *Dr. Resnikoff*

Plaintiff next argues that the ALJ improperly considered Dr. Resnikoff's psychiatric evaluation because the ALJ "provided only a cursory response" to the evidence arising from the evaluation and failed to explain why certain evidence was rejected.  (ECF No. 9 at 12-14.)  Plaintiff also seems to suggest that Dr. Resnikoff's evaluation should have been considered by the ALJ as a medical opinion because of the many observations it contained.  (*Id.* at 13-14.)  The Commissioner responds that Dr. Resnikoff "did not provide a medical opinion on Plaintiff's ability to perform work related activity," and that the ALJ noted nonetheless that Dr. Resnikoff's findings supported "no more than moderate mental functional limitations."  (ECF No. 11 at 12.)

An ALJ is not required to address every piece of evidence adduced through the disability determination process.  *Joseph P. v. Comm'r of Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132 (Mar. 27, 2017))).  Here, the ALJ discussed Dr. Resnikoff's report and other evidence regarding Plaintiff's mental impairments, including treatment records from *after* Dr. Resnikoff's examination, at length.  (AR 66.)  Then, the ALJ analyzed this evidence to draw relevant conclusions.  (*Id.*)  For example, the ALJ determined that "[w]hile the evidence notes a major depressive disorder, an anxiety disorder, a bipolar disorder and [PSTD], the evidence also notes that the claimant reported improvement in her symptoms with compliance to prescribed medication."  (*Id.*)  Indeed, the later treatment records, as the ALJ discussed, show Plaintiff "reported doing well with her current medication and further reported decreased anxiety, depression and mood swings."  (*Id.*)  Plaintiff reported troubling symptoms when she stopped taking her medication and was continuously advised to "take her medications as prescribed."  (*Id.*)

Moreover, while Plaintiff argues that the ALJ did not explain why certain evidence was rejected, the ALJ does not purport to reject any evidence in the decision. Indeed, the ALJ incorporated mental limitations into the RFC. (*Id.* at 67.) As such, the ALJ clearly identified evidence that supported the decision's conclusions and thus provided a sufficient explanation.

The Court also finds that the ALJ appropriately considered Dr. Resnikoff's evaluation as objective medical evidence and/or other medical evidence, rather than as a medical opinion about Plaintiff's ability to work. A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. § 416.913(a)(2). In other words, medical opinions "are about impairment-related limitations and restrictions" in areas related to a claimant's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 416.913(a)(2)(i)(B). By contrast, a second category of evidence, "objective medical evidence," includes "medical signs, laboratory findings, or both." *Id.* § 416.913(a)(1). Psychiatric "signs" include "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 416.902(l). A third category of "other medical evidence" is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 416.913(a)(3).

Plaintiff does not point to which portion of the evaluation contains the alleged medical opinion, and based on the Court's review, the evaluation does not purport to comment on "what

14

[Plaintiff] can still do despite [her] impairment(s)."  *Id.* § 416.913(a)(2).  Instead, Dr. Resnikoff's report provided a perfunctory summary of the examiner's observations on the nature and severity of Plaintiff's impairments, stated Dr. Resnikoff's test results, and offered resulting diagnoses.  (AR 570.)  For example, Dr. Resnikoff reported that Plaintiff "identified five common objects around the room and was able to recall in delayed recall the names of three of these same objects after five minutes," among other such observations.  (*Id.*)  Dr. Resnikoff makes no connection between these observations and Plaintiff's ability to work.  As such, these observations appear to be "signs" of a psychiatric impairment, a form of objective medical evidence.  *See Knittle v. Kijakazi*, Civ. No. 20-945, 2021 WL 5918706, at *6 (M.D. Pa. Dec. 15, 2021) (finding a report was not a medical opinion where the doctor did not provide "a function-by-function analysis" and did not "opine about what [the plaintiff] can still do despite his impairments").  As already explained, the ALJ thoroughly summarized Dr. Resnikoff's evaluation and discussed it with the other evidence in the record, and as such the Court finds it was properly considered.[10]  (AR 66.)

## B.    Whether Substantial Evidence Supports the RFC Assessment

Plaintiff's second argument is that the RFC assessment was not supported by substantial evidence.  (ECF No. 9 at 15-17.)  Plaintiff argues that while the ALJ credits Plaintiff's physical and mental impairments, the ALJ does not adequately explain how those impairments resulted in the given limitations.  (*Id.*)  In doing so, Plaintiff argues that the ALJ failed to comply with SSR 96-8p (Assessing Residual Functional Capacity in Initial Claims), 1996 WL 374184 (July 2, 1996), which requires ALJs to "specify the evidence" relied upon to come to their conclusions.  (*Id.* at

---

[10]    Even if Dr. Resnikoff's opinion is considered a medical opinion, for the reasons already stated, the ALJ properly explained how she considered the report such that the Court is not "frustrate[d]" in its ability to "determine whether substantial evidence supports that evaluation."  *Devonte C. Kijakazi*, Civ. No. 21-141, 2023 WL 2808103, at *8 (D.N.J. Apr. 6, 2023).

17.)  The Commissioner argues that "the record demonstrates that Plaintiff's impairments were not disabling" and that outpatient records indicated "symptom improvement with medication compliance."  (ECF No. 11 at 10-11.)  The Commissioner also emphasizes the standard of review, which is deferential to the ALJ's fact-finding.  (*Id.* at 11.)

A claimant's RFC is the most that the claimant can do despite her limitations.  20 C.F.R. § 416.945(a).  When conducting an RFC assessment, the ALJ is not required to provide a "written analysis about how [the ALJ] considered each piece of evidence."  *Joseph P.*, 2023 WL 1929945, at *5 (quoting 82 Fed. Reg. 5844-01, at 5858).  Instead, regulations reflect a "reasonable articulation standard" in which the "decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'"  *Id.* (quoting 82 Fed. Reg. 5844-01, at 5858).  In tracing this path, "[a]n ALJ 'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'"  *Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (citation omitted).  But "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."  *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, the Court can trace the path of the ALJ's reasoning and therefore the RFC is sufficiently explained.  The ALJ summarizes Plaintiff's hearing testimony and then walks through the record evidence for each of Plaintiff's severe impairments: seizures, migraines, and psychiatric impairments.  (AR 64-67.)  For example, regarding Plaintiff's seizures, the ALJ found that records indicate Plaintiff's seizures are well-controlled and noted this was consistent with Plaintiff's testimony.  (*Id.* at 65.)  Regarding Plaintiff's migraines, the ALJ noted that Plaintiff reported to her doctor that "Ubrelvy was effective for her headaches" and that "claimant's medications are effective for these migraines."  (*Id.* at 65-66 (citing AR Exhibits B1F, B2F, B5F).)  Regarding

16

Plaintiff's psychiatric impairment, the ALJ noted that Plaintiff "reported improvement in her symptoms with compliance to prescribed medication," was not on medication at the time of the hearing, and only attended therapy once a week. (*Id.* at 66 (citing AR Exhibits B6F, B8F).) Taken together, the ALJ sufficiently specified the evidence relied on to draw conclusions: the path the ALJ took from evidence to limitations is clear, as is the logical bridge between the evidence and limitations. With acknowledgment that "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations," the Court finds that the ALJ did not err in performing the RFC assessment. *Chandler*, 667 F.3d at 359.

### C.    Whether the ALJ Properly Addressed Plaintiff's Migraines

Finally, Plaintiff argues that the ALJ improperly considered Plaintiff's migraines at steps three and four. At step three, Plaintiff contends that the ALJ did not explain why Plaintiff's migraines did not meet the criteria of a Listed Impairment, even though the ALJ determined it was a "severe" impairment. (ECF No. 9 at 17-20.) At step four, Plaintiff argues that the ALJ improperly rejected Plaintiff's migraine symptoms and inappropriately "cherry-pick[ed]" from the record. (*Id.* at 17-18, 20-28.) The Commissioner responds that the ALJ properly considered Plaintiff's migraines at steps three and four because the ALJ discussed Plaintiff's treatment from 2020 through 2022 and explained that Plaintiff's medications were effective for her migraines. (ECF No. 11 at 12-13.) The Court agrees with the Commissioner and finds that the ALJ properly considered Plaintiff's migraines at both steps.

#### 1.    *Step Three*

Plaintiff argues that the ALJ failed to explain at step three why Plaintiff's symptoms did not equal a listed impairment—specifically, Paragraph B of Listing 11.02—such that Plaintiff was *per se* disabled. (ECF No. 9 at 17-20.) The Commissioner argues that the ALJ properly considered

Plaintiff's migraines and that the record shows Plaintiff's medications were effective for her migraines. (ECF No. 11 at 13 (citing AR 476-97, 498-567, 573-75).)

At step three of the sequential analysis, an ALJ determines if the claimant's impairment meets or is equal to one of the impairments listed in appendix 1 to subpart P of part 404 of chapter III of title 20 of the Code of Federal Regulations (C.F.R.). *See* 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment is equivalent to a listed impairment, the claimant is considered disabled for the purposes of receiving SSI, and no further analysis is necessary. *Id.* The claimant has the burden to produce evidence showing that their impairment matches or is equal in severity to a listed impairment. *See Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). The claimant must "meet *all* of the specified medical criteria" and "present medical findings equal in severity to *all* the criteria" of a listed impairment. *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)) (emphasis in original).

An ALJ must "fully develop the record and explain his findings at step three, including an analysis of whether and why [each of the claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). A reviewing court should read an ALJ's decision "as a whole," and there need only be "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Moreover, although it is error for an ALJ to provide conclusory statements that do not adequately describe the reasons for their holding, if the error is harmless, this Court may affirm the ALJ's decision. *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006). Where the record contains "abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence," an ALJ's conclusory statement at step three is harmless. *Id.*

There is no separate listing for primary headache disorders such as migraines. However, "migraines can medically equal Listing § 11.02, the listing for epilepsy," and therefore this listing "can be used to evaluate primary headache disorders such as migraines." *Marielena R. v. Dudek*, Civ. No. 24-1006, 2025 WL 834751, at *5 (E.D. Pa. Mar. 17, 2025). Paragraph B of Listing 11.02 requires: "Dyscognitive seizures . . . occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R., pt. 404, subpt. P, app. 1 § 111.02B. Dyscognitive seizures involve "alteration of consciousness without convulsions or loss of muscle control." *Id.* § 111.00F1b. When counting the occurrence of a claimant's migraines, an ALJ starts counting one month after prescribed treatment begins and cannot count seizures that occur during a period in which a claimant does not adhere to prescribed treatment without good reason. *Id.* § 111.00F4. Good reason includes situations where, for example, "the treatment is very risky . . . due to its consequences or unusual nature" or where the claimant cannot afford treatment and there are no community resources. *Id.*; *see also* 20 C.F.R. § 416.930(c) (describing need to follow prescribed treatment). "Adherence to prescribed treatment" means that a claimant takes medicine or otherwise followed treatment procedures for three consecutive months, but the impairment continues to otherwise meet listing requirements despite treatment. *Id.* § 111.00C. Further, SSR 19-4p on Evaluating Cases Involving Primary Headache Disorders states:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: [1] a detailed description from an [Acceptable Medical Source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); [2] the frequency of headache events; [3] adherence to prescribed treatment; [4] side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and [5] limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

2019 WL 416935, at *7 (Aug. 26, 2019).

Here, the ALJ stated that "[t]here is no standard listing that addresses migraines. However, the undersigned has evaluated the impairment herein pursuant to the extensive and detailed guidelines as set forth in SSR 19-4p." (AR 62.) And at step four of the evaluation, discussed *supra*, the ALJ provided a fulsome description of the record regarding Plaintiff's migraines, which the Court has found sufficient to permit meaningful review of the ALJ's decision. (*See id.* at 65-67.) Specifically, the ALJ acknowledged Plaintiff's testimony regarding the frequency and length of her migraines and her need for darkness and quiet, but concluded that "the evidence fails to support such frequency or any disabling limitations." (*Id.* at 65.) The ALJ then summarized the evidence from 2020 through 2022, including treatment records of Plaintiff's primary physician and neurologist. (*Id.* at 65-66.) The ALJ noted that Plaintiff "did not allege that she needed to be in the dark with no noise" and that she "admitted to discontinuing Elavil." (*Id.* at 65; *see also id.* at 482.) The ALJ pointed to record evidence suggesting that medication eases Plaintiff's migraines. (*Id.* at 65-66, 478, 482, 574.) The ALJ also noted Plaintiff's otherwise normal examinations. (*Id.* at 65-66.) Ultimately, the ALJ concluded that "[w]hile the record notes that the claimant has a medically determinable impairment involving chronic headaches and migraines, the record also notes that the claimant's medications are effective for these migraines." (*Id.* at 66.) For these reasons, "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." *Jones*, 364 F.3d at 505; *see also Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007) (finding a step three analysis supported by substantial evidence where the ALJ "identified the relevant listings in his opinion, discussed the medical evidence and [the claimant's] testimony, and explained that the evidence demonstrated that [the claimant's] impairments do not

meet or equal the listing requirements"); *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) (finding "a searching review of the medical evidence" following an ALJ's conclusive statement "sufficient"); *Parrotta v. Kijakazi*, Civ. No. 21-13602, 2022 WL 2289554, at *10 (D.N.J. June 24, 2022) (finding the ALJ's conclusion that medical evidence did not equal a listing was "supported . . . throughout his decision").

Moreover, while Plaintiff further argues that "the record *prima facie* establishes" that Plaintiff's migraine symptoms—including three to four migraines per week despite medication, migraines severe enough to cause vomiting, ineffective medications, and the need for dark and quiet spaces while experiencing migraines—meet the requirements of the listing, substantial evidence supports the ALJ's conclusion that medication improved Plaintiff's migraines, even such that her primary care physician determined her migraines were "controlled." (ECF No. 9 at 18-20.) In June 2022, Plaintiff's neurologist wrote that Plaintiff reported "Ubrelvy is effective for her headaches." (AR 478.) The physician also reported that Plaintiff "is awake, alert and oriented." (*Id.*) In November 2022, Plaintiff's neurologist wrote that Plaintiff "states that Ubrelvy did help." (*Id.* at 574.) The ALJ does not discuss Plaintiff's records from 2023, but these records further support the ALJ's conclusion that Plaintiff's migraines do not equal a listing. In January 2023, treatment records from Plaintiff's primary care provider indicate that Plaintiff took Fioricet for migraines and that her migraines are "controlled." (*Id.* at 609-10.) While a February 2023 visit indicates her migraines are "not controlled," a March 2023 report notes Plaintiff is "trying gabapentin with her neurologist." (*Id.* at 603-04, 606-07.) In May 2023, Plaintiff sought to "restart" Fioricet, as "[s]he had lost [the] bottle" and asked the doctor to authorize a refill. (*Id.* at 600-01.) In June 2023, treatment records indicate that Plaintiff's migraines are "controlled." (*Id.* at 597-98.) There are no reports of vomiting or the need to be in a dark room in these later records.

Taken together, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's migraines do not meet or equal the severity of Listing 11.02.

### 2. *Step Four*

Plaintiff points to SSR 16-3 for the proposition that the ALJ's decision needed to "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  (ECF No. 9 at 18 (quoting SSR 16-3p, 2016 WL 1119029, at *9).)  Plaintiff argues that the ALJ's reasons for rejecting Plaintiff's symptoms "consisted of only irrelevant clinical findings and unexplored and vague statements regarding the effectiveness of treatment."  (*Id.*)  The Commissioner does not appear to offer a response.

When "an individual alleges impairment-related symptoms," ALJs "must evaluate those symptoms using a two-step process."  SSR 16-3p, 2016 WL 1119029, at *2.  First, ALJ's "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  *Id.*  "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [ALJs must] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*  When evaluating the intensity and persistence of the symptoms, the ALJ must "consider all of the evidence in an individual's record."  *Id.*  An ALJ must "not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled."  *Id.* at *4.  If an ALJ "cannot make a disability determination or decision that is fully favorable based solely on

objective medical evidence, then [the ALJ must] carefully consider other evidence in the record" including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms." *Id.* at *5. "[M]edical sources"—distinct from "objective medical evidence"—may provide "[i]mportant information about symptoms" including "[o]nset, description of the character and location of the symptoms, precipitating and aggravating factors, frequency and duration, change over a period of time (*e.g.*, whether worsening, improving, or static), and daily activities." *Id.* at *6; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing similar factors to consider).

An ALJ's decision must "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions." SSR 16-3p, 2016 WL 1119029, at *8. "[I]t is not sufficient for [ALJs] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered.'" *Id.* at *9. Instead, the decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Here, the Court finds that the ALJ followed the applicable regulations and that the ALJ's findings were based on substantial evidence in the record. The ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 64.) Proceeding to step two, the ALJ found that Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 64-65.) Although alone this may seem conclusory, the Court must consider the ALJ's decision "as a whole," *Jones*, 364 F.3d at 505,

and, indeed, this statement is followed by a lengthy paragraph evaluating the evidence as to Plaintiff's migraines, as the Court has already discussed in multiple sections *supra*.  (*See* AR 65-66.)  The ALJ thoroughly summarized the medical evidence—including Plaintiff's testimony, primary care treatment notes, and neurologist treatment notes—which revealed that the evidence "fails to support such frequency [of two to three migraine headaches a week] or any disabling limitations."  (*Id.* at 65.)  The ALJ also noted that Plaintiff's primary care provider indicated Plaintiff's migraines were "fairly controlled" and that Ubrelvy was "effective for her headaches," contrary to Plaintiff's reported symptoms.  (*Id.* (citing AR 478).)  Moreover, the ALJ's findings were supported by substantial evidence in the record as discussed *supra*.  Accordingly, the ALJ "explain[ed] which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence" and articulated "how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions."  SSR 16-3p, 2016 WL 1119029, at *8.

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**.  An appropriate Order follows.


Dated:  December 19, 2025                                    _____
                                                           **GEORGETTE CASTNER**
                                                           **UNITED STATES DISTRICT JUDGE**